UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| DR. TONEY FORD, SR., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | CAUSE NO. 1:14-CV-320 PS |
|  | ) |  |
| DEREK SESSOMS, DAVID GILBERT, | ) |  |
| JAMES LOFTIN, WAYNE SEYBOLD, | ) |  |
| DON BATCHELOR, FRED TROXXEL, | ) |  |
| HENRY SMITH, MADONNA FRENCH, | ) |  |
| JOCELYN WHITTAKER, FRED | ) |  |
| THOMPSON JR., BRAD LUZZADER | ) |  |
| JIM BRUNER, MARION (IN) POLICE | ) |  |
| DEPARTMENT, DAVID PENTICUFF | ) |  |
| AND MISHELE WRIGHT, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

OPINION AND ORDER

Dr. Toney Ford, Sr., a *pro se* plaintiff, seeks leave to file a complaint without payment of the ordinarily required filing fee. His Petition to Proceed without Pre-Payment of Fees and Costs [DE 2] is a sworn declaration supporting his financial eligibility for the request. Nonetheless, under 28 U.S.C. §1915A, leave to file without the payment of the filing fee subjects Ford's complaint to a screening review, and to dismissal if I determine that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Ford's pleading is titled "Complaint for Civil Rights Violations, False Arrest, Wrongful Prosecution, and Libel and Slander." [DE 1.] Defendants include members of the Marion, Indiana Police Department -- Chief of Police David Gilbert, Lieutenant James Loftin and Officer Derek Sessoms. The mayor of Marion, Wayne Seybold, is named, along with eight members of

the City Council – Don Batchelor, Fred Troxxel, Henry Smith, Madonna French, Jocelyn Whittaker, Brad Luzzader, Paul Thompson Jr., and Jim Bruner. Editor David Penticuff and reporter Mishele Wright of the *Chronicle Tribune* newspaper of Marion are also defendants.

Ford's claims arise from a strange incident in which he alleges that he was followed by what turned out to be a police car, causing him to have a traffic accident, after which he was arrested on unexplained charges and unreasonably denied release on bond. Ford further complains that in the aftermath of these events, the *Marion Chronicle Tribune* published an article containing "false accusations and other slanderous and misleading statements" concerning the matter, so as cover up the improper actions of the police and public officials involved. [DE 1 at ¶35.] Ford's factual allegations do not identify the driver of the car that allegedly caused Ford to have an accident, nor do they name the police officers who arrived on the scene thereafter and placed him under arrest. [DE 1 at ¶29.] Despite this gap in the story, Count I attributes Ford's "initial harassment, subsequent arrest and unlawful detention" to "Defendant Sessoms or those acting on behalf of Defendant Sessoms." [DE 1 at ¶44].

To survive dismissal, the complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. Thus, the plaintiff "must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Nevertheless, I must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Counts I and III purport to be claims for violations of Ford's free exercise rights under the first amendment, brought under 42 U.S.C. §1983. The allegations of Count I refer to defendant Sessoms, a Marion police officer, and unspecified "others." [DE 1 at ¶¶45, 46.] The actions complained of are "initial harassment, subsequent arrest and unlawful detention, cruel and unusual fine, [and] libelous and slanderous posting with the local media." [*Id*. at ¶44.] Count III names the Mayor, the Police Chief, Lieutenant Loftin, and the eight City Council members, and charges them with vicarious liability for the unlawful acts of defendant Sessoms.

The free exercise clause of the first amendment is "an absolute prohibition against governmental regulation of religious beliefs." *Bob Jones Univ. v. United States,* 461 U.S. 574, 603 (1983). "Free-exercise problems usually rise when a law, regulation, or some action of a public official interferes with a religiously motivated practice, forbearance, or other conduct." *Korte v. Sebelius*, 735 F.3d 654, 676 (7th Cir. 2013). Ford's allegations do not disclose any activity on his part in the nature of religious activity that would bring into play the protections of the free exercise clause. Even the most generous construction does not yield a plausible claim on the allegations and theory set forth in Counts I and III of Ford's complaint, which will be dismissed without prejudice.

Counts II and IV have a similar relationship with one another. Count II asserts that Ford's equal protection rights were violated when Sessoms "or those acting on behalf of Defendant Sessoms" discriminated against Ford because of his race and nationality. [DE 1 at ¶49.] The specific challenged conduct referred to is Ford's "unlawful arrest and detention." [*Id*.]

3

Count IV asserts the vicarious liability of the other police and municipal official defendants for Sessoms' equal protection violations, by their authorization of and acquiescence in that conduct, and due to a custom and policy of deliberate indifference to Ford's constitutional rights. Count II adequately pleads an equal protection claim against Sessoms, if the complaint is generously construed to allege that Sessoms was one of the police officers who acted to harass, arrest and detain Ford and did so based on his race or nationality.

The vicarious liability claim against the other defendants in Count IV is on shakier ground. "Because there is no vicarious liability under Section 1983, these defendants could be liable only if they personally did something that violated [plaintiff's] rights." *Miller v. Harbaugh*, 698 F.3d 956, 960 (7th Cir. 2012). "Section 1983 limits liability to public employees 'for their own misdeeds, and not for anyone else's.'" *Hoban v. Godinez*, 502 F.3d Appx. 574, 578 (7th Cir. 2012), quoting *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). The complaint contains no factual allegations of the personal involvement of Mayor Seybold, Chief Gilbert, Lt. Loftin or the city council members in the arrest and detention of Ford, but only that "[d]espite knowledge and adequate opportunity to learn of the misconduct of [Sessoms] and to remedy such misconduct," they "adopted, approved, and ratified the acts, omissions, and misconduct of Defendant Sessoms." [DE 1 at ¶41.]

Under *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978), a violation of someone's rights resulting from a municipal custom or policy may result in *the city's* liability. But a municipal custom or policy does not somehow transfer liability to other individual defendants who had no personal role in the alleged violation. "Public officials do not have a free-floating obligation to put things to rights." *Burks*, 555 F.3d at 595. A "contention that any

4

public employee who knows (or should know) about a wrong must do something to fix it is just and effort to evade, by indirection, *Monell*'s rule that public employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. The absence of allegations that the mayor, the police chief, lieutenant, and the members of the city council took any actions that caused or contributed to the violation of Ford's rights means that the claim of an equal protection violation against these defendants lacks facial plausibility, because the there's no reasonable inference from the pleading that they could be liable to Ford. Count IV will be dismissed without prejudice.

Count V of the complaint is labeled "Violations of Title VI of the Civil Rights Act of 1964" and invokes 42 U.S.C. §2000d, which prohibits racial discrimination in programs receiving federal financial assistance. The allegations of the complaint do not identify any program receiving federal financial assistance. Count V contains references to the privileges and immunities clause [DE 1 at ¶66] and to a failure to train defendant Sessoms and other members of the police department [*Id.* at ¶68], which are conclusions unsupported by facts and don't support a facially plausible claim of any kind, much less one under Title VI. Count V will be dismissed without prejudice.

The remaining five counts of the complaint, Counts VI through IX (but with two different Count VIIIs), are all claims under state law: breach of implied contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, wrongful prosecution, libel and slander. There is no federal question jurisdiction over these claims, and it does not appear that diversity jurisdiction exists over them, given that plaintiff Ford and all the defendants are citizens of Indiana. My jurisdiction over these claims would have to be supplemental

5

jurisdiction under 28 U.S.C. §1367 on the ground that these claims are sufficiently related to the remaining federal claim.

But I can decline to exercise supplemental jurisdiction for a number of reasons, several of which I find applicable here. I can decline to exercise supplemental jurisdiction over claims that raise novel or complex issues of state law. *See* §1367(c)(1). Applying legal theories of implied contract, the implied covenant of good faith and fair dealing, and promissory estoppel against municipal officers and officials arising out of a disputed arrest and detention certainly presents novel issues of state law that are at least potentially complex. Moreover, contending with five different state law theories against a multiplicity of municipal defendants plus the libel and slander claims that involve the newspaper defendants would "substantially predominate" over the sole remaining federal claim – the equal protection claim against defendant Sessoms – that will otherwise survive this screening. On that basis, §1367(c)(2) also supports my decision to decline to exercise supplemental jurisdiction over Counts VI through IX, which will be dismissed without prejudice.

The case will proceed on Count II against defendant Sessoms. Because Ford is proceeding *in forma pauperis*, the United States Marshal will serve defendant Sessoms without cost. However, Ford has not submitted the required USM-285 form. Though Ford is not obligated to have the United States Marshal serve defendant Sessoms, if he wants them to do so, he must properly complete and file one of these forms. Without it, the U.S. Marshals Service cannot effect service of process in this case.

For these reasons, the court:

(1) **GRANTS** plaintiff Ford's Petition to Proceed without Pre-Payment of Fees and Costs [DE 2];

(2) **GRANTS** plaintiff leave to proceed on Count II of his complaint against defendant Sessoms;

(3) **DISMISSES** all the other counts without prejudice, and **DISMISSES** all defendants other than Sessoms;

(4) **DIRECTS** the clerk to send Ford a blank USM-285 form;

(5) **GRANTS** Ford to and including December 5, 2014, to either return the completed form or notify the court that he would like to have the clerk issue the summons to him so that he can effect service by some other method permitted by Federal Rule of Civil Procedure 4;

(6) **CAUTIONS** Ford that if he does not respond by the deadline, this case will be dismissed without further notice;

(7) in the event the USM-285 is returned **DIRECTS** the United States Marshals Service to effect service of process on defendant Sessoms, pursuant to 28 U.S.C. § 1915(d); and

(8) **ORDERS** defendant Sessoms to respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE, only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED: November 20, 2014.

　　　　　　　　　　　　　　　　　　　　　　/s/ Philip P. Simon
　　　　　　　　　　　　　　　　　　　　　　Philip P. Simon, Chief Judge
　　　　　　　　　　　　　　　　　　　　　　United States District Court