UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DR. TONEY FORD, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:14CV320-PPS |
| | ) |
| DEREK SESSOMS, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On September 23, 2013, Dr. Toney Ford, Sr. had an unhappy encounter with Marion, Indiana police officer Derek Sessoms. On October 14, 2014, Ford filed a broad lawsuit about the encounter, naming defendants including Marion's mayor, members of the Marion City Council, and the local newspaper editor, and alleging that his arrest was the result of racial profiling without cause. By now, only the claim against Officer Sessoms remains. Ford alleges that his arrest was racially motivated and in violation of his Equal Protection rights. The case has finally progressed to the summary judgment stage, at which the parties must put their evidentiary cards on the table to see if a trial is required. Both Ford and Sessoms have filed motions for summary judgment. Ford's motion fails because he lacks evidence to support his claim that Sessoms' conduct was racially motivated. Sessoms' motion, by contrast, succeeds because he supports his story with evidence and Ford has no evidence to contradict it.

## Equal Protection Claim

Ford's remaining Equal Protection claims concern Sessoms' alleged harassment of Ford, by the manner in which Sessoms followed the car Ford drove, and by Sessoms' arrest of Ford. "Racial profiling, or selective enforcement of the law, is a violation of the Equal Protection Clause." *Sow v. Fortville Police Dep't.*, 636 F.3d 293, 303 (7th Cir. 2011), citing *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez*, 251 F.3d at 635-36. The discriminatory effect prong requires Ford to demonstrate that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class. *Id*. at 636. To show discriminatory purpose "'implies more than...intent as an awareness of consequences. It implies that the decisionmaker...selected or reaffirmed a particular course of action at least in part "because of"...its adverse effects upon an identifiable group.'" *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). To survive summary judgment, Ford is "required to provide evidence that [Sessoms] was 'motivated by a discriminatory purpose.'" *Sow*, 636 F.3d at 303, quoting *Chavez*, 251 F.3d at 635-36.

## Material Facts

In the summary judgment context, Rule 56(c)(1)(A) requires a party who is "asserting that a fact cannot be or is genuinely disputed" to "support the assertion by citing to particular parts of materials in the record…or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." In considering the parties' compliance with these requirements, I "need consider only the cited materials," and am not required to comb the record for evidence not specifically cited by the parties. Rule 56(c)(3).

Ford's summary judgment briefing fails to set forth material facts supported by citations to evidence of record, and freely mixes factual assertions with argument and speculation. He makes ridiculous claims of the existence of "compelling and overwhelming" evidence of a pattern of race-based harassment, when he has adduced no such evidence, much less evidence that warrants his dramatic adjectives. [DE 109 at 7.] The only evidence Ford has submitted in connection with the cross-motions for summary judgment are exhibits to "Plaintiff's Addendum on Damages Pursuant to F.R.C.P. 9(g)" [DE 110], filed with his motion for summary judgment. As the title suggests, this document presents Ford's statement and calculation of his damages, supported by exhibits relating to job opportunities and his work as a speaker and professor. Ford also cites allegations in his verified complaint. "[A] verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary

judgment, because it 'contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion.'" *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017), quoting *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

The complaint alleges that after leaving work on September 23, Ford noticed a "strange white car" following him. [DE 1 at 5.] Attempting to evade the car because it "closely trail[ed] Dr. Ford's vehicle," Ford chose to drive between the curb and a car stopped at an intersection, ultimately hitting a stop sign. [*Id*. at 6.] Ford "exited the vehicle and left on foot." [*Id*.] These basic facts about what occurred are not disputed by Sessoms. Among the facts the complaint omits but are now undisputed is that Ford sideswiped the car that was stopped at the intersection and struck both a fire hydrant and a stop sign. This led to Ford's conviction via his plea of guilty to 2 misdemeanors arising out of the incident – charges of resisting law enforcement and failure to stop at the scene of an accident resulting in damage to an attended vehicle.

In support of his version of the story, Officer Sessoms offers deposition testimony from himself and Ford and the driver of the sideswiped car, as well as police reports. Here are the relevant facts asserted by defendant Sessoms and supported by his evidence. On the afternoon of September 23, Sessoms was on patrol in his squad car when he saw an individual named Anthony Clark in an alleyway. Clark was a person known to Sessoms, and Sessoms believed that a warrant for Clark's arrest was outstanding. Sessoms radioed dispatch to confirm the existence of the warrant, and saw Clark turn and run through the alley. Sessoms circled the block and saw a black

4

Mercury Sable which he associated with Anthony Clark's gang.  When Sessoms was within sight of the Sable, its driver pulled into a parking lot and stopped.  Sessoms believed this behavior was likely intended to avoid a traffic stop.

Sessoms again circled the block to approach the vehicle but by the time he returned, the Sable had exited the parking lot.  Sessoms followed the Sable as it accelerated to speeds above the posted limit, and Sessoms activated his emergency lights.  As the Sable approached the intersection at 5th and Western, it attempted to drive between the curb and a car stopped at the intersection.  The Sable sideswiped the other car (driven by deponent Carolyn Ann Hiatt), and struck a stop sign and fire hydrant.  Plaintiff Ford, who had been driving the Sable, exited the car and fled on foot.  Sessoms pursued Ford on foot, caught up to him in a nearby parking lot, and placed him under arrest.

Ford attempts to create genuine disputes about several facts asserted (and supported) by Sessoms' evidence.  Ford argues that there is no evidence to "verify" that Sessoms contacted dispatch about a warrant for Anthony Clark.  [DE 115 at 4.] But there is such evidence—Sessoms testified to the fact in his deposition [DE 113-1 at 7 (internal p. 13, ℓℓ. 5-10)], and it is reflected in Sessoms' narrative in the police report, which also reflects his initial radio report that he might have spotted Clark [DE 113-2 at 1-2].  Ford's notion of the necessity of corroboration is misplaced.  Rule 56(c)(1)(A) offers three options for demonstrating that the fact to which Sessoms testifies is genuinely disputed.  The first is to cite to particular evidentiary material, but Ford offers no

5

evidence to contradict Sessoms on this point.  The other options are to show that Ford's cited evidence doesn't establish the absence of a genuine dispute or that it is inadmissible evidence, neither of which Ford is able to do.  In any event, whether or not Sessoms confirmed the existence of a warrant for Clark is not material to the summary judgment analysis.

Ford contends that Sessoms was not driving a marked police car.  For this proposition Ford cites a portion of his deposition that has not been filed with the court.  Sessoms' own testimony that he was driving a marked police car is supported by the testimony of Ms. Hiatt.  [DE 113-1 at 24  (internal p.81, ℓℓ. 5-13); DE 113-4 at 7 (internal p.16, , ℓℓ. 1-12).]  Ultimately, disputed or not, whether Sessoms was in a marked police car is not material to Ford's claim that Sessoms was motivated by Ford's race to tail him and arrest him after he left the scene of the accident with Ms. Hiatt's car, the stop sign and the fire hydrant.

Ford raises a question about the registration of the car he was driving, as though to cast doubt on Sessoms' claim that he believed it belonged to someone associated with Anthony Clark.  The police reports reflect two different license numbers for the black Sable, and two different owners, one of whom is the woman Sessoms believes is associated with Anthony Clark.  No matter what the confused state of the actual ownership of the car, that muddle does not impact Sessoms' claim that he believed the car was associated with Anthony Clark, whom he wished to pursue at that time based on the outstanding warrant.  Ford also takes issue with the reasonableness of Sessoms'

behavior in following the black car, specifically the route he drove to maintain proximity to the car. This argument similarly does not bear upon Sessoms' motive in following the car, and does not create a triable dispute of fact that Sessoms was motivated by the driver's race.

Next Ford questions whether Sessoms activated his siren or lights prior to the accident, suggesting that without these signals, Ford had no reason to respond to Sessoms as a police officer. But Ford pled guilty to resisting law enforcement. In any event, the issue is neither here nor there—Ford does not demonstrate that whether or not Sessoms attempted to pull Ford over prior to the accident has any relevance to the elements of the remaining Equal Protection claim.

## **Discussion**

Under Fed.R.Civ.P. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The claim remaining in this case after the screening review under 28 U.S.C. §1915(e)(2)(B) is an Equal Protection claim that Officer Sessoms "acted to harass, arrest and detain Ford and did so based on his race or nationality." [DE 3 at 4.] Ford's own motion for summary judgment and his opposition to Sessoms' motion fail for Ford's lack of evidence that could enable a reasonable jury to find essential elements of his Equal Protection claim, namely that he suffered a discriminatory effect by being treated differently from similarly situated non-blacks, and that Sessoms acted with discriminatory purpose in following and arresting Ford.

7

Ford offers no evidence to support either race-based element of his Equal Protection claim – no statistics, for example, and no evidence of racial bias on the part of Sessoms.  The arrest was clearly supported by probable cause after Sessoms witnessed Ford cause an accident and leave the scene.  Even assuming it is possible for such an arrest to be nonetheless racially motivated, Ford has produced no evidence to support such a finding.  As to the harassment, assuming without deciding that the manner in which Sessoms tailed Ford's car could constitute a police officer's actionable harassment of a driver, again Ford has adduced no evidence that could sustain a jury's verdict that the action was motivated by a discriminatory purpose or that Sessoms was treating Ford differently than similarly situated non-blacks.

Instead, Ford's entire strategy appears to be to attempt to cast doubt on Sessoms' explanation for his conduct, namely that he had spotted Anthony Clark and was pursuing him based on the outstanding warrant.  "[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts – no proof – to support his claims, summary judgment in favor of the defendant is proper." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).  *See also Morgan v. SVT, LLC*, 724 F.3d 990, 999 (7th Cir. 2013); *Rayford v. Wexford Health Sources*, 400 Fed. Appx. 100, 103-04 (7th Cir. 2010).  Ford offers no proof of racial bias, but instead merely speculates that Sessoms has fabricated his claims about Anthony Clark and the familiar car as a *post hoc* justification for his racial harassment of Ford.

With no personal knowledge of Sessoms' motives, and no documents, statements, or other proofs of discriminatory intent, Ford is unable to create a genuine dispute of material fact. Asked repeatedly in his deposition what evidence he had that Sessoms based his conduct on race, Ford identified none, claiming that his investigation was not complete or indicating that he "reserved judgment" and refused to "paint [himself] in a corner." [DE 113-5 at 3.] Even now, after discovery is indisputably complete, Ford has no evidence to support his claim of race discrimination, and a "hunch about the defendant's motives...in itself will not survive a motion for summary judgment." *Springer*, 518 F.3d at 484. The paucity of Ford's evidentiary support dooms his claims against Sessoms in both his individual and official capacities for the simple reason that Ford is unable to demonstrate that his Equal Protection rights were violated, so that a determination of who is responsible and on what basis need not (indeed cannot) be made.

In opposition to Sessoms' motion, Ford suggests that he is "advancing a 'class of one' equal protection claim" and so "is not required to prove" that the defendant intentionally treated him differently because of the protected class to which he belongs. [DE 115 at 13.] In response, Sessoms points out that Ford's Equal Protection claim has never been based on a class of one. [DE 127 at 5.] Instead, Count II of Ford's complaint is expressly based on race as a class: "Plaintiff is a member of a suspect class and was unlawfully discriminated against because of his race and nationality." [DE 1 at 9, ¶48.] Ford never pled a "class of one" claim, and cannot "'amend his complaint through

9

arguments in his brief in opposition to a motion for summary judgment.'" *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), quoting *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002).[1]

But let's assume for the moment that Ford's last minute change of course to a "class of one" theory is not a new factual claim but is instead better characterized as a new legal theory. It is true, after all, that it is "factual allegations, not legal theories, that must be pled in a complaint." *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014). But it still gets Ford nowhere because to prove a class of one Equal Protection claim, a plaintiff must show that he was "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008). The crux of a class of one Equal Protection claim is to prevent government from singling out individuals for arbitrary and irrational purposes. *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2014). There is simply no evidence in the record to suggest that Ford was somehow arbitrarily and irrationally singled out for arrest. Nor is there evidence that others similarly situated—in other words, those who get in accidents and then try to flee the

---

[1] A similar late-blooming claim is that Sessoms wrongfully attempted to stop Ford prior to the accident and that this constituted an unlawful seizure of Ford. [DE 115 at 17-19.] Ford belatedly raises this Fourth Amendment claim despite the fact that elsewhere in his briefs he repeatedly contends that Sessoms *did not* activate his lights or siren prior to the accident, and at one point expressly states that "prior to the occurrence of the accident...Defendant had also not attempted to stop [Plaintiff] Ford[.]" [DE 109 at 29; *see also* DE 109 at 29; DE 115 at 7.] The claim is a non-starter because Ford's own contentions defeat it.

scene—are somehow treated differently by the Marion Police Department than Ford was.

### Conclusion

Summary judgment has been described as the "'put up or shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). To preserve his remaining claims for trial, Ford "must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel*, 612 F.3d at 937, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Ford has failed to offer evidence on which a reasonable jury could rely to determine that Sessoms acted with discriminatory effect and discriminatory purpose, both of which are required for Ford to succeed on his Equal Protection claims.

ACCORDINGLY:

Plaintiff Toney Ford's motion for summary judgment [DE 109] is DENIED.

Defendant Derek Sessoms' motion for summary judgment [DE 111] is GRANTED.

The Clerk shall enter judgment in favor of all defendants and against plaintiff, and this case is thereby CLOSED.

**SO ORDERED.**

**ENTERED: May 30, 2017.**

/s/ Philip P. Simon
**Philip P. Simon, Judge**